FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

2014 SEP 26  PM 3: 46

MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

MULTIMEDIA HOLDINGS CORPORATION and
GANNETT RIVER STATES PUBLISHING
CORPORATION d/b/a WTLV/WJXX
FIRST COAST NEWS, MORRIS PUBLISHING
GROUP, LLC d/b/a *THE FLORIDA TIMES-UNION*,
GRAHAM MEDIA GROUP, FLORIDA, INC.,
d/b/a WJXT-TV4, COX TELEVISION JACKSONVILLE, LLC,

      Plaintiffs,

v.

Case No. 3 14-CV-1177-J-32MCR

THE HONORABLE DONALD R. MORAN, JR.,
CHIEF JUDGE, FOURTH JUDICIAL CIRCUIT,
IN AND FOR DUVAL, CLAY AND NASSAU
COUNTIES, FLORIDA.

      Defendants.

———————————————

## COMPLAINT

Multimedia Holdings Corporation and Gannett River States Publishing Corporation
d/b/a WTLV/WJXX First Coast News ("First Coast News"); Morris Publishing Group, LLC,
d/b/a *The Florida Times-Union* ("FTU"); Graham Media Group, Florida, Inc., d/b/a WJXT-
TV-4 ("WJXT"); and Cox Television Jacksonville, LLC, WJAX/WFOX ("Action News")
(collectively, "Plaintiffs") sue the Honorable Donald R. Moran Jr. in his official
administrative capacity as Chief Judge of the Fourth Judicial Circuit in and for Duval, Clay
and Nassau Counties, Florida ("Chief Judge Moran").

1.      This is an action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive
relief challenging the constitutionality of administrative orders that prohibit the media from

interviewing or filming anyone inside the Duval County Courthouse (the "Courthouse"), except in narrowly defined locations. The media prohibitions are contained in (i) Administrative Order 2013-08, entered by Chief Judge Moran on December 19, 2013 ("Order 2013-08"), attached as Exhibit "A"; (ii) Second Amended Administrative Order No. 92-02, entered by Chief Judge Moran on April 23, 2013 ("Order 92-02"), attached as Exhibit "B"; (iii) Memo from Chief Judge Moran dated August 19, 2014 (the "August Memo"), attached as Exhibit "C" (collectively, the "Administrative Orders"); and (iv) and an oral order, entered by Chief Judge Moran on August 29, 2014.

2.      Plaintiffs represent all major print and broadcast news media in Jacksonville serving northeast Florida: *The Florida Times-Union*, the daily newspaper; First Coast News, the NBC and ABC affiliates; Action News, the CBS and Fox affiliates; and WJXT, News4Jax. All Plaintiffs are represented on the Media Committee for the Fourth Judicial Circuit. The Administrative Orders have hindered the Plaintiffs' efforts to gather news and access to court proceedings as a proxy for the public.

3.      The Administrative Orders are unconstitutional on their face and as applied because they: (i) violate Plaintiffs' First and Fourteenth Amendment rights; (ii) are unconstitutionally overbroad; (iii) chill Plaintiffs' ability to access the courts and gather news; (iv) impose a prior restraint on Plaintiffs' speech and receipt of information; and (v) are unconstitutionally vague.

### JURISDICTION

4.      This case arises under the United States Constitution and 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

5.     Venue is proper in this Court pursuant to 28 U.S.C. 1391.

## PARTIES

6.     Plaintiffs First Coast News, WJXT, and Action News broadcast television and web-based news serving northeast Florida.  Plaintiff FTU publishes *The Florida Times-Union,* a daily newspaper of general circulation in northeast Florida.

7.     Defendant, the Honorable Donald R. Moran, Jr., is sued in his official capacity as Chief Judge for the Fourth Judicial Circuit, in and for Duval, Clay and Nassau Counties, Florida. Chief Judge Moran is the administrative officer of the courts within the Fourth Judicial Circuit and is authorized to enter administrative orders.

8.     At all times relevant to this Complaint, the acts of Chief Judge Moran were administrative functions performed in his position as an officer of the State of Florida and under color of state law and were not performed in his judicial capacity.

## GENERAL ALLEGATIONS

9.     The Administrative Orders purport to be entered in order to "(1) control the conduct of proceedings before the Court, (2) ensure decorum and prevent distractions, and (3) ensure the fair administration of justice in the Court's pending cases." Order 92-02 at 1, Order 2013-08 at 1.

10.    Order 92-02 governs media and technological coverage of all judicial proceedings in the Courthouse.

11.    Order 2013-08 governs media and technological coverage of "cases of extraordinary public interest."

3

### Restrictions on Interviews

12.     Orders 92-02 and 2013-08 forbid media representatives from conducting "interviews" in the atrium, hallways, courtrooms, or any other areas of the Courthouse, except in the Courthouse's "Media Room" or other specifically designated locations. Ex. A at 12, Ex. B at 7. Neither Order defines the term "interview".

13.     The Administrative Orders have hindered Plaintiffs' speech and ability to gather news since their inception. For instance, reporters traditionally gather news through informal conversations in the courtroom (when the court is not in session), in the hallways outside the courtroom, or in other areas within the courthouse.  Those informal conversations off-the-record build trust and relationships.  Without being able to build these relationships, persons the reporters would like to interview on the record are uncomfortable speaking to them.  Further, asking a potential interviewee if he or she will accompany the reporter to another location in the courthouse or to a location outside the courthouse before being able to interview or even talk with that person makes interviews difficult, if not impossible to obtain. Thus, aware of the provisions within the Administrative Orders, reporters have been either unable to interview people connected with news stories and/or have refrained from conducting interviews for fear of violating the orders and the resulting sanctions.

14.     The Administrative Orders are so broad in their scope that even talking with someone in the courthouse to arrange an interview has been construed by bailiffs as a violation of the administrative orders.

15.     Order 2013-08 states: "Anyone violating this Order will be subject to contempt proceedings of the Court, and, when appropriate, sanctioned by the Court –

including, but not limited to, immediate removal from the Courtroom, prohibition from returning to the Courtroom, and loss of media privileges for the duration of the trial." Ex. A at 14.

### Restrictions on Filming

16.     Order 92-02 governs filming in the courtroom with television equipment and cell phones. Its only reference to filming outside the courtroom is under the heading "Location of Equipment and Personnel" and provides that "television camera shall be positioned in such location in the Courtroom *or at the Courthouse* as shall be designated by (a) the Chief Judge, in consultation with the Trial Court Administrator and the Jacksonville Sheriff's Office Courthouse Security Manager or their designee . . . The area shall provide reasonable access to coverage." Ex. B at 5. Order 2013-08 contains a similar provision. Ex. A at 8.

17.     On August 18, 2014, a First Coast News photographer believed that Orders 92-02 and 2013-08 permitted him to film in the Courthouse hallways. He attempted to film a process server in the second floor hallway, first with his station camera and then with his iPhone, but was prevented from filming by an officer from the Jacksonville Sheriff 's Office.

18.     The following day, Chief Judge Moran issued the August Memo, which stated that filming is absolutely prohibited in the Courthouse hallways. Chief Judge Moran justified the prohibition on filming with the following statement in the August Memo:

> There are many reasons for not allowing filming in the hallways. . . . For example, filming in the hallways *may* create disturbances. In fact, in the past, filming has caused crowds to gather, which can lead to hallways being blocked as well as confrontational issues.

Ex. C at 1 (emphasis added).

19.     The August Memo stated: "If any media representative refuses to abide by this Memorandum or to respect the rules of the Courthouse, then that individual will not be allowed future access into the Courthouse or, in the alternative, will be allowed access and all film, equipment, and electronic devices will be confiscated until business in the Courthouse is complete." Ex. C at 1.

### Restrictions on Use of Cell Phones for Transmission of Data

20.     On August 29, 2014, Chief Judge Moran issued an oral order that barred media members from using cellphones and similar devices, but not iPads and similar devices, to work in the courtroom.

### Effect of Sanctions

21.     The threatened sanctions prevent Plaintiffs from effectively gathering news and reporting on court proceedings.

### Enforcement

22.     The Administrative Orders have been vigorously enforced and will continue to be enforced unless this Court intervenes.

### Meeting with Chief Judge Moran

23.     Acting on behalf of Plaintiffs First Coast News and FTU, George D. Gabel, Jr., Esq. met with Chief Judge Moran to discuss the news media's concerns and particularly, the Florida Supreme Court case, *In re Adoption of Proposed Local Rule 17 of the Criminal Division of the Circuit Court of the Eleventh Judicial Circuit of Florida*, 339 So. 2d 181 (Fla. 1976).    Chief Judge Moran was not persuaded and found the case to be "highly

6

distinguishable". A copy of Chief Judge Moran's letter to George Gabel is attached as Exhibit "D".

### State Appeal

24.     On August 28, 2014, Plaintiffs sought relief in Florida's First District Court of Appeal by filing an emergency petition pursuant to Rule 9.100(d), Florida Rules of Appellate Procedure, which provides for review of orders excluding the press from court proceedings.

25.     On September 23, 2014, the First District Court of Appeal dismissed the emergency petition for lack of jurisdiction on the ground that Rule 9.100(d) applies only to court "proceedings". Concurring in part and dissenting in part, Judge Scott Makar stated the petition was more similar to an as-applied constitutional challenge than to a Rule 9.100(d) petition, and that the 30 day time limit for seeking review of the (written) administrative orders pursuant to Rule 9.100(d) had passed.  Judge Makar also stated that the August 29, 2014 oral order presented a close jurisdictional question.

26.     Plaintiffs have no remedy pursuant to state law since there is no conflict jurisdiction in the Florida Supreme Court. Pursuant to the First District Court of Appeal's construction of Rule 9.100(d), the violation of the media's right of access to court proceedings becomes insulated from review 30 days after the order is entered. Plaintiffs' sole avenue for relief is before this Court.

27.     Plaintiffs' claim for attorney's fees and costs is based on 42 U.S.C § 1988, which provides an award of fees and costs for a prevailing plaintiff in a 42 U.S.C. § 1983 action.

### COUNT ONE
### (Violation of First Amendment Rights)

28.     Plaintiffs' claim for relief is predicated on 42 U.S.C. §§ 1983 and 1988.

29.     Plaintiffs reincorporate the allegations in paragraphs numbered 1 through 27.

30.     The Administrative Orders are not narrowly tailored to serve a significant governmental interest.

31.     Chief Judge Moran failed to consider less restrictive means for achieving his stated goals: (1) controlling the conduct of proceedings before the Court, (2) ensuring decorum and preventing distractions; and (3) ensuring the fair administration of justice in the Court's pending cases. For example: If someone becomes confrontational due to newsgathering activity, he can be removed; if a crowd gathers due to an interview, it can be instructed to disperse; and if a media representative's actions threatens the fair administration of justice *in a particular case*, the presiding judge can take protective measures.

32.     Plaintiffs' speech and newsgathering activities in the Courthouse have not disrupted the conduct of court proceedings, breached decorum, or threatened the fair administration of justice.

33.     The Administrative Orders' regulation of media-related speech is not content neutral.

34.     The Administrative Orders are substantially overbroad and sweep in protected activities that do not implicate any the governmental interests they purport to serve.

35.     Plaintiffs seriously wish to speak and film in the Courthouse to express themselves, freely associate with others, and gather news.

36.     It is highly probable that the Administrative Orders will continue to be enforced.

37.     The Administrative Orders have caused Plaintiffs to self-censor for fear of being sanctioned.

38.     The Administrative Orders' prohibitions on filming and interviews constitute unconstitutional prior restraints on speech.

39.     Plaintiffs have suffered, and will continue to suffer, an irreparable injury to their First Amendment rights for which there is no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request this Court to: (i) declare that the Defendant violated the Plaintiffs' First Amendment rights; (ii) enjoin the Defendant from violating the Plaintiffs' First Amendment Rights and, specifically, from enforcing the unconstitutional Administrative Orders; (iii) award Plaintiffs reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and (iv) grant any other relief that the Court deems appropriate.

## COUNT TWO
### (Violation of First and Fourteenth Amendment Rights - Vagueness)

40.     Plaintiffs' claim for relief is predicated on 42 U.S.C. §§ 1983 and 1988.

41.     Plaintiffs reincorporate the allegations in paragraphs numbered 1 through 27.

42.     The term "interview" in the Administrative Orders is unconstitutionally vague.

43.     The test for unconstitutional vagueness is especially stringent in this case because the Administrative Orders implicate First Amendment concerns.

44.     Plaintiffs seriously wish to engage in speech in the courtrooms and public areas of the Courthouse to express themselves, freely associate with others, and gather news.

This speech includes not only interviews, but also interview requests and casual conversations with fellow journalists, potential sources, and other citizens.

45. The Administrative Orders are vague as applied to Plaintiffs because it is unclear whether the Administrative Orders prohibit only formal, on-the-record interviews, or prohibit Plaintiffs from asking anyone a question.

46. Plaintiffs and court personnel lack any guidance or standards for applying the prohibition against "interviews". As a result, court personnel have invoked the Administrative Orders to bar Plaintiffs from even entering casual conversations, a prohibition and prior restraint that does not apply to lawyers, police officers, investigators, or any other member of the general public. It is highly probable that the Administrative Orders will continue to be enforced.

47. The Administrative Orders have caused Plaintiffs to self-censor for fear of being sanctioned.

48. Plaintiffs have suffered, and will continue to suffer, an irreparable injury to their First Amendment and Due Process rights for which there is no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request this Court to: (i) declare that the Defendant violated the Plaintiffs' First Amendment and Due Process rights; (ii) enjoin the Defendant from violating the Plaintiffs' First Amendment and Due Process Rights and, specifically, from enforcing the unconstitutional Administrative Orders; (iii) award Plaintiffs reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and (iv) grant any other relief that the Court deems appropriate.

Dated: September 26, 2014.

HOLLAND & KNIGHT LLP

/s/ George D. Gabel, Jr.
George D. Gabel, Jr.
Florida Bar No. 027220
george.gabel@hklaw.com
Suzanne M. Judas
Florida Bar No. 862037
suzanne.judas@hklaw.com
Ben Z. Williamson
Florida Bar No. 87454
ben.williamson@hklaw.com
50 N. Laura Street, Suite 3900
Jacksonville, FL 32202
(904) 353-2000
Facsimile: (904) 358-1872

Attorneys for Plaintiffs

#33137366_v1